

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

Vir2us, Inc.,

                    **Plaintiff and Counterclaim Defendant,**

v.                                                   **Civil Action No. 2:15cv162**

Invincea, Inc. and
Invincea Labs, LLC,

                    **Defendants and Counterclaim Plaintiffs.**

## OPINION AND ORDER

On Monday, February 1, 2016, the Court conducted a <u>Markman</u> hearing for the purpose

of construing ten (10) disputed terms in the patents at issue.  Upon consideration of the parties'

briefs and oral arguments, the Court ruled from the bench as to nine (9) of these terms and took

the construction of one (1) term under advisement.  On February 5, 2016, the Court entered an

order further detailing its construction of every term except the one taken under advisement.

Doc. 69.  The Court hereby issues this Opinion and Order further detailing the Court's claim

construction as to the tenth term at issue.

### I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

On April 15, 2015, Plaintiff Vir2us, Inc. ("Plaintiff" or "Vir2us") filed a two-count

Complaint, alleging that Defendants Invincea, Inc. and Invincea Labs, LLC ("Defendants" or

"Invincea") have infringed U.S. Patent Nos. 7,392,541 ("the '541 Patent") and 7,536,598 ("the

'598 Patent").  Doc. 1.  Essentially, Plaintiff alleges that Defendants are infringing certain claims

in the '541 and '598 Patents by, for example, "inducing third parties, including without

limitation, manufacturers, resellers, developers, customers, and end users" directly to infringe the

claims of the '541 Patent "by installing the Invincea Accused Products on computing devices[,] using the Invincea Accused Products in their normal and customary manner," and providing "technical and marketing literature, tutorials, presentations, lectures, product demonstrations, and videos to customers and end users on how to install, operate configure, and use" certain of Defendants' products.  Compl. ¶¶ 14, 18.  Vir2us alleges similar claims of infringement pertaining to the '598 Patent. See Compl. ¶¶ 26, 27.  Defendants filed their answer on June 12, 2015, Doc. 17, denying they infringed on the patents at issue. See Answer ¶ 1.  Additionally, Defendants asserted the affirmative defenses of Failure to State a Claim, Non-Infringement, Invalidity, Prosecution History Estoppel, Limitation on Damages, No Right to Injunctive Relief, Laches, Equitable Estoppel and Waiver, 28 U.S.C. § 1498(a).  Answer ¶¶ 34–44.

Defendants also alleged counterclaims against Vir2us, asserting that Plaintiff has infringed U.S. Patent No. 8,839,422 ("the '422 Patent") by "making, using, offering to sell, and/or selling in the United States, without authority, products including without limitation Vir2us's software, including Vir2us Immunity Suite, Vir2us Immunity Platform and/or Vir2us Genesis." Answer ¶ 59.  Defendants also seek a declaration that they did not infring any claim of the '541 Patent or the '598 Patent.  Answer ¶¶ 67, 72.  Defendants' counterclaim also alleges that one or more claims of the '541 or '598 Patents are invalid.  Answer ¶¶ 76, 80.  On July 2, 2015, Vir2us responded to Invincea's counterclaims, denying infringement and willful infringement of the '422 Patent.  Doc. 21 ¶ 61.  Vir2us asserted the affirmative defenses of Patent Invalidity, Non-Infringement, Prosecution Disclaimer and Prosecution History Estoppel, Limitation of Damages, No Right to Injunctive Relief, and Lack of Standing.  Doc. 21 ¶¶ 82–87.

On September 23, 2015, the Court entered its Rule 16(b) Scheduling Order.  Doc. 24. The parties filed their Joint Identification of Patent Claims and Disputed Claim Terms on

December 18, 2015, Doc. 47, after the Court held a hearing to address Vir2us's Emergency Motion to Strike Invincea's Identification of Claim Terms for Failure to Comply with the Court's Scheduling Order, Doc. 34.   The parties filed their opening claim construction briefs on December 23, 2015. Docs. 48, 51. On January 11, 2016, the parties filed their responsive briefs. Doc. 57, 58. On January 18, 2016, the parties filed a Joint Claim Construction and Prehearing Statement, in which they outlined the terms to be construed at the hearing.   Doc. 61.   The Court entered an Order on February 5, 2016 construing nine (9) of the disputed claim terms.   Doc. 69.

## II. LEGAL PRINCIPLES OF CLAIM CONSTRUCTION

### A. General Principles

The purpose of a Markman hearing is to assist the Court in construing the meaning of the patent(s) at issue. Markman v. Westview Instruments, Inc., 517 U.S. 370, 371 (1996); Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996).   Patents consist of "claims," and the construction of those claims "is a question of law, to be determined by the court."   Markman, 517 U.S. at 371; Markman, 52 F.3d at 970–71.   A court need only construe, however, claims "that are in controversy, and only to the extent necessary to resolve the controversy."   Vivid Techs., Inc. v. Am. Science Eng'g, Inc., 200 F.3d 795, 803 (Fed. Cir. 1999) (citations omitted).   To be clear, "[c]laim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement.   It is not an obligatory exercise in redundancy." NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1311 (Fed. Cir. 2005) (citing U.S. Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1568 (Fed. Cir. 1997)).

Claim construction begins with the words of the claims. Vitronics Corp. v. Conceptromc, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("First, we look to the words of the claims themselves

. . . ."). Words in a claim are generally given their ordinary meaning as understood by a person of ordinary skill in the art (a "POSITA"). Id. This "person of ordinary skill in the art is deemed to read the claim term not only in the particular claim in which the disputed term appears but also in the context of the entire patent, including the specification." Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). "In some cases, . . . the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than application of the widely accepted meaning of commonly understood words." Id. at 1314. Often, however, "determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art. Because the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claims language to mean." Id.

Further, the claims themselves can provide substantial guidance as to the meaning of particular claim terms. Id. First, "the context in which a term is used within a claim can be highly instructive." Id. In addition, other claims of the patent in question, both asserted and unasserted, can also be useful because claim terms are "normally used consistently throughout the patent" and therefore "can often illuminate the meaning of the same term in other claims." Id.

The claims should not be read alone, however, but rather should be considered within the context of the specification of which they are a part. Markman, 52 F.3d at 978. As the Federal Circuit stated in Vitronics and restated in Phillips, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the

meaning of a disputed term." Phillips, 415 F.3d at 1315.  The Court, however, must not read in limitations from the specification without clear intent to do so.  Thorner v. Sony Comp. Entmt. Am. LLC, 669 F.3d 1362, 1366 (Fed. Cir. 2012).  Furthermore, a patentee is free to be his or her own lexicographer, and thus if the patentee defines a term in the specification differently than its ordinary meaning, the patentee's definition controls.  Phillips, 415 F.3d at 1316.

In addition to consulting the specification, a court may also consider the patent's prosecution history, if in evidence, because it provides information regarding how the United States Patent and Trademark Office and the inventor understood the patent.  See id. at 1317.  It also enables the Court to determine if the inventor limited the invention during the course of prosecution.  Id.  "[W]here an applicant whose claim is rejected on reference to a prior patent … voluntarily restricts himself by an amendment of his claim to a specific structure, having thus narrowed his claim in order to obtain a patent, he may not by construction … give the claim the larger scope which it might have had without the amendments."  I.T.S. Rubber Co. v. Essex Rubber Co., 272 U.S. 429, 444 (1926).  Thus, consulting prior art reference in the prosecution history is permissible.  Vitronics, 90 F.3d at 1583.

These elements of the patent itself—the claims, the specification, and its prosecution history—constitute intrinsic evidence of claim construction.   In addition to such intrinsic evidence, a court may consider extrinsic evidence to determine the meaning of disputed claims. Phillips, 415 F.3d at 1317.  Such extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises."  Phillips, 415 F.3d at 1317 (citing Markman, 52 F.3d at 980).  However, the Court should not rely on extrinsic evidence when the intrinsic evidence removes all ambiguity. Vitronics, 90 F.3d at 1583.

Such extrinsic evidence generally is held as less reliable than the intrinsic evidence and "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of intrinsic evidence." Id. at 1317–18. With respect to expert evidence, for example, "[c]onclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court . . . [and] a court should discount any expert testimony that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent." Id. at 1318.

With respect to general usage dictionaries, the Federal Circuit noted that "[d]ictionaries or comparable sources are often useful to assist in understanding the commonly understood meaning of words and have been used . . . in claim construction," and further noted that "a dictionary definition has the value of being an unbiased source 'accessible to the public in advance of litigation.'" Id. at 1322 (citing Vitronics, 90 F.3d at 1585). However, the Federal Circuit cautions that (1) "'a general-usage dictionary cannot overcome art-specific evidence of the meaning' of a claim term;" that (2) "the use of the dictionary may extend patent protection beyond what should properly be afforded by the inventor's patent;" and that (3) "[t]here is no guarantee that a term is used in the same way in a treatise as it would be by the patentee." Phillips, 415 F.3d 1322 (quoting Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n, 366 F.3d 1311, 1321 (Fed. Cir. 2004)).[1] Indeed, "different dictionary definitions may contain somewhat different sets of definitions for the same words. A claim should not rise or fall based

---

[1] In Phillips, the Federal Circuit thus expressly discounted the approach taken in Texas Digital Systems, Inc. v. Telegenix, Inc., 308 F. 3d 1193 (Fed. Cir. 2002), in which the court placed greater emphasis on dictionary definitions of claim terms. Phillips, 415 F.3d at 1319–24 ("Although the concern expressed by the court in Texas Digital was valid, the methodology it adopted placed too much reliance on extrinsic sources such as dictionaries, treatises, and encyclopedias and too little on intrinsic sources, in particular the specification and prosecution history."). The Federal Circuit reaffirmed the approach in Vitronics, Markman, and Innova as the proper approach for district courts to follow in claim construction, but acknowledged that there was "no magic formula" for claim construction, and that a court is not "barred from considering any particular sources . . . as long as those sources are not used to contradict claim meaning that is unambiguous in light of the intrinsic evidence." Phillips, 415 F.3d at 1324.

upon the preferences of a particular dictionary editor, . . . uninformed by the specification, to rely

on one dictionary rather than another." Id.

## B. The "Canons of Claim Construction"

The Federal Circuit has recognized certain guideposts, or "canons of construction," to

assist a district court in determining the meaning of disputed claim terms and phrases. These are

merely guideposts, however, and are not immutable rules:[2]

1. Doctrine of Claim Differentiation: Ordinarily, each claim in a patent has a different scope. See, e.g., Versa Corp. v. Ag-Bag Int't Ltd., 392 F.3d 1325, 1330 (Fed. Cir. 2004). Ordinarily, a dependent claim has a narrower scope than the claim from which it depends. See, e.g., Phillips, 415 F.3d at 1315. Ordinarily, an independent claim has a broader scope than a claim that depends from it. See, e.g., Free Motion Fitness, Inc. v. Cybex Int'l, Inc., 423 F.3d 1343, 1351 (Fed. Cir. 2005).

2. Ordinarily, claims are not limited to the preferred embodiment disclosed in the specification. See, e.g., Phillips, 415 F.3d at 1323.

3. Ordinarily, different words in a patent have different meanings. See, e.g., Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1119–20 (Fed. Cir. 2004).

4. Ordinarily, the same word in a patent has the same meaning. See, e.g., Phillips, 415 F.3d at 1314.

5. Ordinarily, the meaning should align with the purpose of the patented invention. See, e.g., Innovad Inc. v. Microsoft Corp., 260 F.3d 1326, 1332–33 (Fed. Cir. 2001).

6. Ordinarily, general descriptive terms are given their full meaning. See, e.g., Innova/Pure Water, Inc., 381 F.3d at 1118.

7. If possible, claims should be construed so as to preserve their validity. See, e.g., Energizer Holdings, Inc. v. Int'l Trade Comm'n, 435 F.3d 1366, 1370–71 (Fed. Cir. 2006).

8. Ordinarily, absent broadening language, numerical ranges are construed exactly as written. See, e.g., Jeneric/Pentron, Inc. v. Dillon Co., 205 F.3d 1377, 1381 (Fed. Cir. 2000).

---

[2] This list is derived from the one provided in the FEDERAL JUDICIAL CENTER, PATENT LAW AND PRACTICE § 5.I.A.3.d (5th ed. 2006).

9.  Ordinarily, absent recitation of order, steps of a method are not construed to have a particular order. See, e.g., Combined Sys., Inc. v. Def. Tech. Corp. of Am., 350 F.3d 1207, 1211–12 (Fed. Cir. 2003).

10. Absent highly persuasive evidentiary support, a construction should literally read on the preferred embodiment. See, e.g., Cytologix Corp. v. Ventana Med. Sys., Inc., 424 F.3d 1168, 1175 (Fed. Cir. 2005).

## III. DISPUTED TERM

The parties dispute whether the term **"switching system for selectably and independently coupling and decoupling the processing logic device with the first storage and/or the second storage under automated control"** at issue in Vir2us's '541 Patent is a means-plus function element governed by 35 U.S.C. § 112(f).

"Means-plus-function limitations permit a patentee to claim an element of her invention in terms of the element's function, without in the claim itself reciting corresponding structure." Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 711 F.3d 1348, 1363-64 (Fed. Cir. 2013). Such claims are governed by 35 U.S.C. § 112(f), which provides:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112(f) (formerly 35 U.S.C. § 112 ¶ 6).

When presented with a request to invoke §112(f), the court must first determine if the section applies. "Means-plus-function claiming applies only to purely functional limitations that do not provide the structure that performs the recited function." Phillips v. AWH Corp., 415 F.3d 1303, 1311 (Fed. Cir. 2005) (citing Watts v. XL Sys., Inc., 232 F.3d 877, 880–81 (Fed.Cir.2000)). There is a rebuttable presumption that § 112(f) applies "[i]f the word 'means' appears in a claim element in association with a function;" that "presumption collapses, however,

if the claim itself recites sufficient structure, material, or acts to perform the claimed function." Callicrate v. Wadsworth Mfg., Inc., 427 F.3d 1361, 1368 (Fed. Cir. 2005). Conversely, a claim term that does not use "means" triggers a rebuttable presumption that § 112(f) does not apply. See DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 469 F.3d 1005, 1023 (Fed. Cir. 2006). The resulting presumption can be rebutted by showing "that the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" Williamson v. Citrix Online, LLC, 792 F.3d 1339, 1348 (Fed. Cir. 2015) (quoting Watts, 232 F.3d at 880). While courts had previously viewed this presumption as strong, the Federal Circuit recently clarified that it is not strong. See Williamson, 792 F.3d at 1349. Yet, courts post-Williamson have still emphasized that "the Federal Circuit 'has long recognized the importance of the presence or absence of the word 'means.'" See Joao Control & Monitoring Systems, LLC v. Protect America, Inc., No. 1-14-cv-134, 2015 WL 4937464, at *5 (W.D. Tex. Aug. 18, 2015) (citing Williamson, 792 F.3d at 1348). Rather than elevating form over substance, however, "the essential inquiry is not merely the presence or absence of the word 'means' but whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." Williamson, 792 F.3d at 1348–49. Importantly, nonce words such as "module," "mechanism," "element," or "device" that represent generic descriptions for software or hardware that perform specified functions normally do not possess sufficiently definite meanings as the name for structures, and "the fact that one of skill in the art could program a computer to perform the recited functions cannot create structure where none otherwise is disclosed." See id. at 1350–51.

In Williamson, the Federal Circuit examined the phrase, "distributed learning control module for receiving communications transmitted between the presenter and the audience

member computer systems and for relaying the communications to an intended receiving computer system and for coordinating the operation of the streaming data module." Id. at 1350. The Federal Circuit noted that this passage is "in a format consistent with traditional means-plus-function claim limitations," even though it does not use the word "means." Id. The court described the term "module" as a replacement for the term "means," holding that "'module' is a well-known nonce word [that] is simply a generic description for software or hardware that performs a specified function." Id. Additionally, the Federal Circuit addressed the prefix "distributed learning control," which it concluded did not impart structure into the term "module." See id. at 1351. Similarly, the Federal Circuit held in Robert Bosch, LLC v. Snap-On Inc. that the term "device" is a non-structural nonce word and that the modification "program loading" provided no structural guidance. 769 F.3d 1094, 1100 (Fed. Cir. 2014). Indeed, the Federal Circuit stressed that the patent was "silent on what such a 'program loading device' consists of; the loading could be achieved by using any type of device that comprises hardware, software, or both." Id. Thus, the Federal Circuit in Robert Bosch decided that § 112(f) applied, despite utilizing the pre-Williamson standard of the strong presumption against so doing. See id. at 1101.

Conversely, the Northern District of California found that the term "content processor" in the phrase, "content processor (i) for processing content received over a network, the content including a call to a first function, and the call including an input, and (ii) for invoking a second function with the input, only if security computer indicates that such invocation is safe," has a sufficiently specific structure. Finjan, Inc. v. Proofpoint, Inc., No. 13-cv-5808, 2015 WL 7770208, at *10–11 (N.D. Cal. December 3, 2015). The court focused on how the claim "describes how the 'content processor' interacts with the invention's other components (the

transmitter and receiver), which informs the term's structural character." Id. at *11. The court distinguished the term from "module" at issue in Williamson, noting that "content processor" was not a generic description for hardware or software and that "the intrinsic evidence establishes the structural character of 'content processor' through its interaction with the system's other components." Id. Therefore, the district court held that the term was not subject to § 112(f) and that it required no further construction other than its plain and ordinary meaning. Id.

In Joao, a post-Williamson case, the Western District of Texas examined the word "system" in the phrase, "a system for detecting a failure in the at least one of a premises system, a premises equipment system, a premises component, a premises device, a premises equipment, and a premises appliance, wherein the detecting system provides information regarding the failure." 2015 WL 4937464, at *4–5. Based on the plain reading of the claim, the district court applied § 112(f), finding that "the patentee merely substitute[d] the word 'system' for the word 'means' and then describe[d] the function of the claimed system." Id. at *5. Therefore, it considered "system" a nonce word, more similar to words like "means," "element," "device," and "module," than words like "detector," "circuit," and "processor." See, e.g., E-Watch Inc. v. Apple, Inc., No. 2:13-cv-1061, 2015 WL 1387947, at *12 (E.D. Tex. March 25, 2015) (collecting cases).

Since the claim here does not use the word "means," there is a presumption that § 112(f) does not apply, albeit not a strong presumption. Invincea argues that the claim phrase replaces the term "means" with the term "system" and thus "is written in a format consistent with traditional means-plus-function claim limitations." Doc. 51 at 14 (citing Williamson, 792 F.3d at 1349). Invincea stresses that "switching system" is not a term of art and that "switching" merely

modifies "system." Id. at 15. Vir2us argues, on the other hand, "that 'switching system' would be understood by a POSITA as the name for a class of structures based on the specification, commonly understood meaning in the art, and other claim limitations of claim 1." Doc. 48 at 10. It thus attempts to distinguish the term "system" as used in this claim from the term as used in JOAO Control by noting that "here, the claim language itself does not simply recite an [sic] 'system' alone but rather a "switching system" that would be understood by a person of ordinary skill in the art as a defined class of structures . . ." Doc. 58 at 15. Vir2us alleges that the "specification makes clear that a 'switching system' – can be 1) implemented in hardware; 2) implemented in software; or 3) implemented as a combination of hardware and software" and that "Invincea's argument that this claim term is subject to 112(6) is an improper attempt to incorporate a physical limitation into a 'switching system.'" Id. at 9–10.

A plain reading of the claim demonstrates that the patentee substituted the word "system" for the word "means" and then describes the function of the claimed system. Just as the Federal Circuit in Williamson and Robert Bosch noted that the prefixes or words modifying "module" and "device," respectively, did not impart structure, see 792 F.3d at 1351; 769 F.3d at 1100, the modifier, "switching," does not give "system" sufficient structure. The "system" here is a generic description for software, hardware, or a combination of the two that performs the recited function, "selectably and independently coupling and decoupling the processing logic device with the first storage and/or second storage under automated control." As the Federal Circuit noted in Williamson, "a generic description for software or hardware that performs a specified function" does not impart sufficient structure. See 792 F.3d at 1350. Therefore, the Court finds that § 112(f) applies to this claim.

Because the Court finds that Invincea has rebutted the presumption that § 112(f) does not apply, it must attempt to construe the phrase. "Construction of a means-plus-function limitation includes two steps. 'First, the court must determine the claimed function. Second, the court must identify the corresponding structure in the written description of the patent that performs the function.'" Noah Sys., Inc. v. Intuit Inc., 675 F.3d 1302, 1311 (Fed. Cir. 2012) (quoting Applied Med. Res. Corp. v. U.S. Surgical Corp., 448 F.3d 1324, 1332 (Fed.Cir.2006)).

A structure disclosed in the specification is a "corresponding structure" if the specification or prosecution history "clearly links or associates that structure to the function recited in the claim." Noah Sys., Inc., 675 F.3d at 1311. Such disclosure must be adequate; thus, a "means-plus-function clause is indefinite if a person of ordinary skill in the art would be unable to recognize the structure in the specification and associate it with the corresponding function in the claim." Id. at 1312.

In cases involving a computer implemented means-plus-function limitation, the specification must disclose an algorithm for performing the claimed function that is more than simply a general purpose computer or microprocessor. Id.; see also Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech., 521 F.3d 1328, 1333 (Fed.Cir.2008). The algorithm may be expressed "in any understandable terms," including mathematical formulas, prose, or as a flowchart, as well as "in any other manner that provides sufficient structure." Finisar Corp. v. DirecTV Grp., Inc., 523 F.3d 1323, 1340 (Fed. Cir. 2008).

Here, both parties agree that the claimed function is "selectably and independently coupling and decoupling the processing logic device with the first storage and/or second storage under automated control." They disagree as to the corresponding structure, but neither argues the term is indefinite.

Invincea focuses its argument on the corresponding structure. See Doc. 51 at 15–18. It examines Figure 9, id. at 17, before concluding that the structure is limited to five switches, see id. at 17. Vir2us alleges that Invincea is improperly limiting the "switching system" to a physical system. See Doc. 58 at 15–16. Invincea concedes that "in appropriate cases, software could qualify as a corresponding structure." Doc. 57 at 8. However, Invincea argues that "that is not the case here because the generic disclosure of software is legally insufficient." Id. Because "the typical physical structure that implements software, a computer, cannot be relied upon to provide sufficiently definite structure for a software claim lacking 'means,'" and since Vir2us "fails to identify any algorithm, flowchart, instructions, or rules from which the disclosed software would provide sufficiently definite structure for the claimed 'switching system,'" Invincea argues that it is not error to limit the construction to physical structures. See id. (citing Apple, 757 F.3d at 1298–99; see also TecSec, 731 F.3d at 1348).

Based on the way the Court construed other terms at the Markman hearing, see Doc. 69, it declines to limit this term's construction to physical structures. The corresponding structure appears to be described in Figures 2 and 3 of the specification, which illustrate a system supporting multiple independent computing environments that may include data stores or a data store switch, terms which the court construed as encompassing hardware, software, or a combination of the two. See Krein Opening Decl., Ex. B ('541 Patent) at 19:17–45; see also Doc. 69. Therefore, the Court adopts Vir2us's proposed construction that the corresponding structure is "both hardware and software embodiments such as the 'data store switch system' shown in Figures 2 and 3 of the '541 Patent."

## IV. Conclusion

For the reasons stated herein, the Court **FINDS** that the disputed term, **"switching system for selectably and independently coupling and decoupling the processing logic device with the first storage and/or the second storage under automated control,"** is a means-plus function element governed by 35 U.S.C. § 112(f).  Accordingly, the Court **FINDS** that the claimed function is **"selectably and independently coupling and decoupling the processing logic device with the first storage and/or the second storage under automated control"** and that the corresponding structure is **"both hardware and software embodiments such as the 'data store switch system' shown in Figures 2 and 3 of the '541 Patent."**

The Clerk is **REQUESTED** to deliver a copy of this Order to all counsel of record.

It is so **ORDERED.**

 

 

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, VA
February 18, 2016