**DATED:   January 27, 2017**

| | |
|---|---|
| **Bloomberg** | x |
| **Lexis** | x |
| **USLW** | x |
| **VaLW** | x |
| **West** | x |

## COVER SHEET FOR PUBLISHING OPINIONS

**Title of Case:**

**Vir2us, Inc.,**

                             **Plaintiff and Counterclaim Defendant,**

      **v.**

**Invincea, Inc. and**
**Invincea Labs, LLC,**

                           **Defendants and Counterclaim Plaintiffs.**

**Criminal Case No.:   2:15cv162**

**Court:**         **UNITED STATES DISTRICT COURT**
                  **EASTERN DISTRICT OF VIRGINIA**
                  **Norfolk Division**

**Opinion Filed:**      **January 27, 2017**

**Judge:**        **Henry Coke Morgan, Jr.**
                  **Senior United States District Judge**

## Counsel for Plaintiff/Counter Defendant Vir2us. Inc.:

**Clark J. Belote**
**Stephen E. Noona**
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510

**Craig C. Reilly**
Law Office of Craig C. Reilly
111 Oronoco St.
Alexandria, VA 22314

**Alden K. W. Lee**
**Brian A. E. Smith**
**Christina M. Finn**

**Henry C. Bunsow**
**Jeffrey D. Chen**
**Joseph J. Fraresso**
Bunsow, De Mory, Smith & Allison LLP
351 California St
Suite 200
San Francisco, CA 94104

**Counsel for Defendants/Counterclaim Plaintiffs Invincea, Inc. and Invincea Labs, LLC:**

**Nathan K. Cummings**
**Christopher C. Campbell**
**Scott A. Cole**
**Stephen C. Crenshaw**
Cooley LLP
11951 Freedom Dr.
Reston, VA 20190

**Carrie J. Richey**
**Matthew E. Buccellato**
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304

**Scott Sukenick**
Cooley LLP
1114 Avenue of the Americas
New York, NY 10036

**Robert W. McFarland**
McGuireWoods LLP
101 W Main St., Suite 9000
Norfolk, VA 23510-1655

**Robert M. Tata**
Hunton & Williams LLP (Norfolk)
500 E Main St., Suite 1000
Norfolk, VA 23510

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

Vir2us, Inc.,

Plaintiff and Counterclaim Defendant,

v.                                              Civil Action No. 2:15cv162

Invincea, Inc. and
Invincea Labs, LLC,

Defendants and Counterclaim Plaintiffs.

## OPINION & ORDER

This matter is before the Court on Plaintiff Vir2us, Inc.'s ("Plaintiff") two motions seeking disciplinary action against Invincea, Inc. and Invincea Labs, LLC (collectively, "Defendant"): an Emergency Motion to Show Cause for Why Invincea Should Not Be Held in Contempt for Violating the Court's Order Compelling Discovery ("Show Cause Motion"), Doc. 430, and a Motion to Strike Defendants' Exhibits Never Produced During Discovery and Never Disclosed to Vir2us ("Motion to Strike"), Doc. 461. For the reasons set forth below, the Court **GRANTS IN PART** the Show Cause Motion, Doc. 430, and **DENIES** the Motion to Strike, Doc. 461, as **MOOT**.

## I.    BACKGROUND

### A.    Procedural History

On April 15, 2015, Plaintiff filed its complaint in this action alleging that Defendant infringed Plaintiff's patents relating to computer system software security. See generally Compl. The Parties engaged in discovery; argued at a Markman claim construction hearing, Docs. 65, 78; filed discovery motions, Docs. 126, 192, 400; and filed motions in limine, Docs. 158, 171,

1

178, 185, 200, 202, 204, 206, 208, 210, 218, 220, 222. Late on May 31, 2016, the night before trial, the Parties settled the case. See Hearing Tr. at 2:13–18, June 1, 2016. On June 1, 2016, the Court held a hearing on the remaining motions, including those currently pending before the Court. Doc. 466. On June 20, 2016, Defendant filed its opposition to the Show Cause Motion and lodged supporting documents with the Court. Doc. 490.

**B.     Facts**

On April 20, 2016, the Parties completed fact and expert discovery. See Doc. 24 at 2. On May 17, 2016, the Court conducted a final pretrial conference, ruled on several outstanding motions, and filed the final pretrial order. Doc. 414; see Docs. 141, 158, 165, 171, 178, 185, 192, 200, 202, 204, 206, 208, 210, 216, 218, 220, 222, 400, 405. On May 24, 2016, Plaintiff filed its Show Cause Motion. Doc. 430. On May 31, 2016, Plaintiff filed its Motion to Strike. Doc. 461.

Defendant's failure to comply with the Federal Rules of Civil Procedure and the Court's discovery orders on this issue needlessly burdened discovery. The April 21, 2016 hearing on Plaintiff's Motion to Compel, Doc. 126, resulted in the Court's ordering Defendant to make several statements under oath: (1) that no investor presentations existed for the period of 2009 through 2013 and that the six (6) produced were the only remnants, Hearing Tr. at 21:23–23:5, Apr. 21, 2016; (2) that all Board meeting minutes and presentations containing sales, product, or competition information had been produced, id. at 24:11–25:9, 33:20–35:6; and (3) that the production of documents after the first deposition of Management Employee A[1] did not change Defendant's supplemental answer to Plaintiff's interrogatory No. 5, id. at 26:22–27:25. The Court also allowed Plaintiff to take a limited subsequent deposition of Management Employee A to address questions that arose when Defendant produced supplemental documents after her first

---

[1] The Court refers to several of Invincea's upper level employees and counsel with capital letters.

deposition.   Id. at 32:18–33:3.   However, the Court stated at the pretrial conference that

Defendant's certifications following the previous hearing did not "satisfy the spirit of the Court's

order" because they addressed only the fact of production, not the substance of the produced

documents.   Hearing Tr. at 17:25–18:8, May 17, 2016.   In granting Plaintiff's request to file

supplemental damage and expert reports, therefore, the Court stated, "[T]his opens the door for

you to file anything you want that's related to these documents which were produced late.

Anything you think that's related to that you can produce or amend, whatever you want." Id. at

19:21–20:2.

## C.    Late Production Timeline

| Date | Event | Source |
|------|-------|--------|
| April 15 | Plaintiff files Motion to Compel | Doc. 126 |
| April 20 | Discovery ends[2] | See Doc. 24 at 2 |
| April 21 | Hearing on Motion to Compel and Motion to Voluntarily Dismiss Count I of Counterclaim<br>• Court allowed Plaintiff to take second deposition of Management Employee A regarding documents produced after her first deposition | Doc. 155 |
| April 29 | Management Employee A declaration #1 | Mgmt. Emp. A Decl., Apr. 29, 2016, Doc. 402, Ex. A |
| May 9 | Defendant produces 65 Invincea Board of Directors presentations | Doc. 430 at 4 n.7 |
| May 11 | Defendant produces 54 Invincea Board meeting minutes | Doc. 430 at 4 n.7 |
| May 16 | Management Employee A declaration #2<br>• "Invincea produced copies of all Board presentations and Board minutes from prior to April 15, 2015."<br>• "Right after this case was filed, Invincea searched its computers and files for documents mentioning Vir2us and found none."<br>• "Invincea has repeated that search several times, and until May 8, 2016, found no documents mentioning Vir2us that existed or were created prior to suit." | Mgmt. Emp. A Decl. ¶¶ 8–9, May 16, 2016, Doc. 392, Ex. 1 |
| | Plaintiff files Motion to Enforce Court's Order Compelling | Doc. 400 |

---

[2] Between the end of discovery on April 20, 2016 and May 25, 2016, Defendant produced at least two hundred ninety-nine (299) additional documents.  Doc. 431 at 4; Doc. 508 at 16; Cooley Counsel A Decl. ¶¶ 8–12.

| | Discovery | |
|---|---|---|
| May 17 | Defendant adds 118 exhibits, including 65 Invincea Board presentations, to Defendant's trial exhibit list in Final Pretrial Order without notifying Plaintiff or the Court | Doc. 461 at 1–2; Doc. 491 at 19–20 |
| | Final pretrial conference Final Pretrial Order | Docs. 414, 405 |
| May 20 | Defendant produces 154 documents including Board meetings, minutes, and presentations | Doc. 431 at 1 |
| May 24 | Plaintiff files Show Cause Motion | Doc. 430 |
| May 25 | After Plaintiff's counsel identifies holes in production, Defendant produces 26 sets of Board meeting materials and other documents from Management Employee B and an engineering manager's hard drives and e-mail accounts | Doc. 508 at 16; Cooley Counsel A Decl. ¶¶ 8–12 |
| May 26 | Management Employee A deposition #2 | |
| May 29 | Defendant adds 19 new exhibits to pretrial exhibit list | Doc. 461 at 3 |
| May 31 | Plaintiff files Motion to Strike | Doc. 461 |
| | Parties settle | See Hearing Tr. at 2:13–18, June 1, 2016. |
| June 1 | Hearing on Show Cause Motion and Motion to Strike | Doc. 466 |
| June 20 | Defendant files Opposition to Show Cause Motion | Doc. 490 |
| | Management Employee A declaration #3 | Mgmt. Emp. A Decl., June 20, 2016, Doc. 493 |
| June 28 | Plaintiff files Reply in support of Show Cause Motion | Doc. 508; see Doc. 510 |

## II.    LEGAL STANDARDS

"[T]he district court has broad discretion in determining the appropriate sanction for a party's noncompliance with a discovery request." Majestic Distilling Co., Inc. v. Stanley Stawski Distrib. Co., 205 F.3d 1333, *4 (4th Cir. 2000) (unpublished table decision); see also Wilson v. Volkswagen of Am., Inc., 561 F.2d 494, 505 (4th Cir. 1977). Even after parties settle, a court may impose sanctions "to ensure the proper functioning of judicial process." Bradley v. Am. Household Inc., 378 F.3d 373, 380 (4th Cir. 2004).

Determining whether discovery sanctions are appropriate requires a three-step analysis of (1) whether a party violated a discovery order or Federal Rule of Civil Procedure; (2) whether the violation was "harmless" or "substantially justified;" and (3) which sanction is appropriate

for the violation.  Samsung Elecs. Co., Ltd. v. Nvidia Corp., 314 F.R.D. 190, 195–96 (E.D. Va.

2016).

Rule 26 requires parties to disclose relevant information during discovery.[3]  Fed. R. Civ.

P. 26.  Rule 37(c) requires parties to disclose relevant information under Rule 26(a) and (e) and

supplement earlier incomplete or incorrect responses.  Fed. R. Civ. P. 37.[4]  Rule 16(f) allows a

court to impose sanctions if a party fails to obey a scheduling or other pretrial order.  Fed. R.

Civ. P. 16(f)(1)(C); see Fed. R. Civ. P. 37(b).  A court may also "order the party, its attorney, or

both to pay the reasonable expenses—including attorney's fees—incurred because of any

noncompliance with this rule, unless the noncompliance was substantially justified or other

---

[3] Rule 26(a) states in pertinent part,
    (1) Initial Disclosure.
        (A) In General.  Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or
        ordered by the court, a party must, without awaiting a discovery request, provide to the
        other parties:
            (i) the name and, if known, the address and telephone number of each individual
        likely to have discoverable information—along with the subjects of that information—
        that the disclosing party may use to support its claims or defenses, unless the use would
        be solely for impeachment;
            (ii) a copy—or a description by category and location—of all documents,
        electronically stored information, and tangible things that the disclosing party has in its
        possession, custody, or control and may use to support its claims or defenses, unless the
        use would be solely for impeachment . . . .
        . . . .
        (C) Time for Initial Disclosures—In General.  A party must make the initial disclosures
        at or within 14 days after the parties' Rule 26(f) conference unless a different time is set
        by stipulation or court order, or unless a party objects during the conference that initial
        disclosures are not appropriate in this action and states the objection in the proposed
        discovery plan.  In ruling on the objection, the court must determine what disclosures, if
        any, are to be made and must set the time for disclosures.
Fed. R. Civ. P. 26(a)(1).
[4] Rule 37(c) states in pertinent part,
    Failure to Disclose, to Supplement an Earlier Response, or to Admit.
    (1) Failure to Disclose or Supplement.  If a party fails to provide information or identify a witness
    as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to
    supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified
    or is harmless.  In addition to or instead of this sanction, the court, on motion and after giving an
    opportunity to be heard:
        (A) may order payment of the reasonable  expenses, including attorney's fees, caused by
        the failure;
        (B) may inform the jury of the party's failure; and
        (C) may impose other appropriate sanctions, including any of the orders listed in Rule
        37(b)(2)(A)(i)–(vi).
Fed. R. Civ. P. 37(c)(1).

circumstances make an award of expenses unjust." Fed. R. Civ. P. 16(f)(2).

## III.   ANALYSIS

### A.   Defendant Violated Rules 37 and 26.

Defendant committed numerous discovery violations during the pendency of this case.

### i.   *Defendant Failed to Properly Search for and Produce Responsive Invincea Investor and Board Materials.*

Through interrogatories and Court intervention, Plaintiff requested all of Defendant's presentations to investors as well as presentations and minutes taken during Invincea's Board of Directors ("Board") meetings. See Doc. 508 at 2. In March 2016, Management Employee A claimed with regard to the investor materials, "After a reasonable search, Invincea produced all the written investor presentations, memorandums offering securities, offering memorandums, private placement memorandums and similar documents provided to actual and potential investors and lenders that could be found in Invincea's files and computers." Mgmt. Emp. A Decl. ¶ 6, Apr. 29, 2016, Doc. 402, Ex. A. Later, Defendant claimed that "if there were written materials for those investor[ presentations conducted early in the company's history], they just don't exist anymore." Hearing Tr. at 21:23–23:10, Apr. 21, 2016. No additional investor materials were ever produced.

However, Defendant produced sixty-five (65) Invincea Board meeting slide show presentations on May 9, 2016, Doc. 430 at 4 n.7; fifty-four (54) Board meeting minutes on May 11, 2016, Doc. 491 at 21; six (6) additional Board presentations on May 20, 2016, Doc. 508 at 16; and twenty-six (26) other Board presentation documents on May 25, 2016, Cooley Counsel A Decl. ¶¶ 8–12. The materials were responsive to various requests for production. See Hearing Tr. at 26:22–27:25, April 21, 2016; Doc. 508 at 2. They were pertinent to issues including "willful infringement, induced and contributory infringement, enhanced damages, and whether

6

and to what extent Invincea copied Vir2us's technology after Vir2us made presentations to various individuals who would later hold key Board of Director and advisor positions at Invincea." Doc. 491 at 16; Doc. 508 at 13. In addition, though Defendant had allegedly searched its document repositories and some employees' computers for documents mentioning "Vir2us," some presentations Defendant eventually produced contained a digital graphic of Vir2us's logo in a discussion of "Emerging Competition." Doc. 491 at 3.

ii. *Defendant Provided Varying Justifications for Its Failure to Produce Company Documents.*

Defendant compounded its failure to produce company documents by providing shifting justifications for their absence.

Regarding the investor presentations, Defendant's counsel stated that Management Employee B "had dozens of meetings with potential investors, but they don't have a unique presentation for each investor." Hearing Tr. at 22:1–4, Apr. 21, 2016. Defendant represented that the presentations were created early in its company history and used "long enough ago that if there were written materials for those investors, they just don't exist anymore." Id. at 22:8–10; Mgmt. Emp. B Dep. 68:11–19; see also Hearing Tr. at 9:5–10:11, May 17, 2016. Management Employee A later reiterated this theory under oath, saying that Management Employee B's laptop had been wiped before the litigation began such that some materials could never be produced: "If any existed, they were lost before this case was filed, before Invincea had heard of Vir2us, and before Invincea had an obligation to preserve them." Mgmt. Emp. A Decl. ¶¶ 2, 7, Apr. 29, 2016, Doc. 402, Ex. A; see also Doc. 491 at 9. Later, Defendant clarified that no laptops had been wiped during the case, but "if any investor presentations were lost, they were lost prior to this case being filed." Cooley Counsel B Decl. ¶¶ 108–09.

As for the Board presentations and minutes, Defendant insinuated that it did not

previously locate some materials because it believed they no longer existed. See Mgmt. Emp. A Dep. 338:22–339:18, May 3, 2016. It also represented that confusion about where documents were electronically stored caused the delay in production. Management Employee A evasively discussed Invincea's storage and search procedures in her declarations and depositions. See Mgmt. Emp. A Decl., Apr. 29, 2016, Doc. 402, Ex. A; Mgmt. Emp. A Dep., May 3, 2016; Hearing Tr. at 10:23–12:5, June 1, 2016.[5] Originally, she declared that "Invincea does not need to produce copies of additional Board presentations or of Board minutes because the information that Vir2us is seeking has already been produced in other documents." Mgmt. Emp. A Decl. ¶ 8, Apr. 29, 2016, Doc. 402, Ex. A. Defendant's lead counsel also expressed this theory. Cooley Counsel B Decl. ¶¶ 113, 116.

Defendant assisted its counsel in searching electronic documents in two (2) ways: it provided documents to counsel for uploading to the firm's Relativity document storage account and gave counsel access to Invincea's Box.com document storage account. Counsel's Relativity database allowed counsel to search the documents' text. Cooley Counsel B Decl. ¶¶ 80–83. The Box.com database allowed Defendant and counsel to conduct an allegedly comprehensive document search: "[I]t's my understanding that . . . . if it wasn't there, it doesn't exist." Mgmt. Emp. A Dep. 338:22–339:18, May 3, 2016. Defendant explained that, consistent with company policy, Management Employee A believed "throughout this litigation that any final versions of Board Minutes and Board Presentations" were stored in the Box.com account. Mgmt. Emp. A Decl. ¶ 83, June 20, 2016, Doc. 493. Defendant could not satisfactorily explain why the Board meeting minutes, which "are just simply a typed-up Microsoft Word document," were not found

---

[5] Upon examining Management Employee A's April 29, 2016 declaration, the Court stated, "That document was very evasive in itself because it never undertook to say that what should have been produced was produced, it just said that certain documents in certain fields were produced." Hearing Tr. at 10:23–12:5, June 1, 2016; see Mgmt. Emp. A Decl., Apr. 29, 2016, Doc. 402, Ex. A.

during searches of Defendant's storage databases.  Hearing Tr. at 19:23–20:1, June 1, 2016. Defendant claimed that it searched "the appropriate folders" and used search terms "like 'minutes'" without success.  Id. at 20:2–7.

The Board materials, of course, were not destroyed and were later produced.  A Board presentation produced on May 25, 2016 was even discovered in the Box.com account, which had allegedly been thoroughly searched.  See Mgmt. Emp. A Dep. 27:7–28:17, May 26, 2016.  One of the Board meeting minutes documents was also found outside the expected storage repository. Hearing Tr. at 20:7–9, June 1, 2016.  Management Employee A also apparently believed that when she testified she had "produced certain documents," she meant "that she had produced them to her attorneys."  Id. at 10:23–11:6.  The materials available in the Box.com and Relativity databases, some of which counsel had earlier located but identified as "cumulative," should have been timely produced to Plaintiff.

Some of the revealed Board materials included the roll of the Board members present at the meetings, crucial information which would have shaped Plaintiff's deposition strategy. Defendant's withholding of responsive documents prohibited Plaintiff from deposing individuals with vital knowledge of Defendant's pre-suit awareness of Plaintiff's products.  Doc. 508 at 8.

Ironically, Defendant's general counsel, a partner at Defendant's lead firm, has regularly attended Invincea Board meetings since the company was founded.  Hearing Tr. at 14:16–15:3, June 1, 2016; Cooley Counsel B Decl. ¶ 138.  The Court inquired whether Defendant had questioned the partner about the missing Board meeting minutes and presentations.  Hearing Tr. at 17:6–9.  Counsel for Defendant asserted twice that "it did not occur to [Defendant] to do so" because Defendant was confident that all relevant Board materials had already been located and produced.  Id.; Cooley Counsel B Decl. ¶ 138.  Clearly, Defendant was mistaken.

### iii. Defendant Failed to Produce Responsive E-mails.

Defendant represented throughout the litigation that "[r]ight after this case was filed, Invincea searched its computers and files for documents mentioning Vir2us and found none" and "repeated that search several times . . . ." Mgmt. Emp. A Decl. ¶ 9, Apr. 29, 2016, Doc. 402, Ex. A. Soon after the Complaint was filed, Management Employee A instructed fourteen (14) management level employees to search their computers for documents referencing "Vir2us," but Management Employees B and C never responded. Doc. 491 at 8–9. No one followed up with these key employees. Id. at 9. Defendant claims that "neither side pursued email production" after identifying their electronically stored information custodians, Doc. 490 at 11, and Defendant proceeded with the litigation believing that, "[w]ithout an e-mail production request from Vir2us, . . ., Invincea had no obligation to search anyone's e-mail," Cooley Counsel B Decl. ¶ 73. However, following Defendant's discovery of the Board materials in May 2016, a search of individual employees' computers and e-mail accounts revealed three (3) e-mails explicitly mentioning "Vir2us." Id. ¶¶ 74–75. Management Employee B, in fact, had communicated with another person about Vir2us as early as March 3, 2010. Doc. 491 at 16. While Management Employee B had previously searched for responsive documents, he searched only his computer hard drive, not his e-mail account, where these e-mails were stored. Cooley Counsel B Decl. ¶ 135. Defendant's counsel admits, "[H]ad we followed up specifically early on with [Management Employees B and C], we would have found those emails." Id. ¶ 73. If Defendant had properly conducted an e-mail search, those three (3) e-mails would have been revealed, particularly because they include "Vir2us" in searchable text rather than in a graphic.

### iv. Defendant's Rebuttal Expert Provided New Non-Infringing Alternative Theories.

Defendant produced Management Employee D as a Rule 30(b)(6) witness responsible for

discussing non-infringing alternatives. He "testified that no non-infringing alternatives were ever discussed or planned by Invincea." Doc. 508 at 21. However, Defendant's technical expert later "advanced four, never-before-disclosed non-infringing alternatives for the first time in his rebuttal infringement report." Id. After Management Employee D's deposition, Defendant's damages expert discussed possible alternatives with Defendant's technical expert, and, relying on Management Employee D's salary calculations and the technical expert's estimate for design-around costs, the damages expert noted his opinions in his report. Cooley Counsel B Decl. ¶¶ 140, 143. Defendant first explained that Plaintiff had not asked "ready, willing, and able" Management Employee D the "right questions," then later claimed that he actually could not have discussed the alternatives because Defendant's experts considered the alternatives after his deposition. Compare Doc. 318 at 2–3 with Doc. 491 at 27. Nevertheless, counsel for Defendant claimed after the case settled, "To my knowledge, Invincea has never planned or implemented any changes to its products to design around the Vir2us patents. . . . . Invincea has, to my knowledge, no documentation about any such design-arounds or non-infringing alternatives to produce to Vir2us." Cooley Counsel B Decl. ¶ 144.

Whether the non-infringing alternatives information would have decidedly impacted Plaintiff's case is unimportant; the Court's concerns are Defendant's noncompliance and lack of transparency.

### v.  *Defendant Failed to Supplement or Amend Its Disclosures*

Defendant's Rule 26 initial disclosure listed only Management Employees A, B, and D as Invincea employees with knowledge about the case. See Doc. 508, Ex. A at 1. However, "as early as April 21, 2015, Invincea knew of numerous former and current Invincea employees" who may have had knowledge of the underlying facts, and Invincea contacted at least fourteen

11

(14) of them during the litigation. Id. at 8; see Doc. 491 at 8–9. Though Plaintiff highlighted the discrepancy, Defendant never supplemented its initial disclosures.

Throughout the litigation, Defendant's witnesses asserted that Defendant had no knowledge of Plaintiff prior to the suit. See Hearing Tr. at 3:20–4:12, May 17, 2016; Doc. 403 at 4–5. Defendant's discovery of the Board materials and Management Employee B's e-mails explicitly naming Plaintiff as a competitor showed this assertion to be false. Defendant, however, never sought to supplement or amend its representations or expert reports relying upon its incorrect belief. See Mgmt. Emp. B Dep. 68:11–19; Mgmt. Emp. A Decl. ¶¶ 7, 9, Apr. 29, 2016, Doc. 402, Ex. A; Doc. 508 at 20; see also Doc. 403 at 5 n.5; Doc. 404 Ex. F.

Furthermore, Defendant filed a Motion for Partial Summary Judgment, Doc. 141, and Motion in Limine, Doc. 185, which were based upon the mistaken belief that Defendant had no pre-suit knowledge of Plaintiff. Defendant never withdrew these documents after discovering the Board materials and Management Employee B's e-mails explicitly naming Vir2us as a competitor. The Court denied the motions. Hearing Tr. at 18:17–19:9, 21:12–17.

**B.    Defendant's Violations Were Harmful and Unjustified.**

A court should not preclude evidence if a party's failure to disclose it was "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1) (noting that a court may impose sanctions "in addition to or instead" of preclusion despite the nondisclosure's harm or justification); S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 596 (4th Cir. 2003). To determine whether a failure to disclose is harmless or substantially justified, a court "should" consider the following factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation

for its failure to disclose the evidence." Id. at 597.[6]   The first four (4) factors relate to harmlessness, while the final factor relates to substantial justification. Id. "Rule 37(c)(1) does not require a finding of bad faith or callous disregard of the discovery rules;" in other words, "faith—good or bad—is not relevant." Id. at 596, 598. A party's intention may, however, be relevant to its explanation for failing to disclose. Id. at 598.

### i.   Surprise to Plaintiff

Plaintiff suspected throughout discovery that Defendant was withholding discoverable materials. See Doc. 508 at 7–8. When Defendant produced the many "missing" Board materials and e-mails, Plaintiff was probably not surprised about their existence. However, Plaintiff and— somehow—Defendant were "stunned" by their contents and direct application to this infringement suit. Cooley Counsel B Decl. ¶ 125.[7] It appears that Defendant was also surprised by the content of the rediscovered and late-produced e-mails explicitly mentioning Plaintiff, and Plaintiff was no doubt surprised as well. See id. ¶¶ 74–75. This factor, therefore, indicates harm to Plaintiff.

### ii.   Ability to Cure Surprise

"A failure to disclose in the right form, at the right time, impedes discovery at the time of nondisclosure, such that later putting the opposing party on notice does not render the nondisclosure unsurprising or curable." Samsung, 314 F.R.D. at 198; accord Carr v. Deeds, 453 F.3d 593, 604 (4th Cir. 2006) (noting that failure to disclose under Rule 26 "undermines the district court's management of the case."). A party cannot cure its failure to disclose by simply

---

[6] A district court imposing discovery sanctions does not abuse its discretion by neglecting to examine every factor. Wilkins v. Montgomery, 751 F.3d 214, 222 (4th Cir. 2014). The Fourth Circuit's use of the word "should" rather than "shall" in relation to the Southern States factors allows courts to consider the factors appropriate to the circumstances of each case. Id. (citing S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003)).
[7] Defendant's counsel was "stunned" to find Plaintiff's name in Board meeting presentation slides despite the fact that Defendant's corporate counsel, a partner at the firm representing Defendant in this case, was present at many of the meetings. Hearing Tr. at 24:18–25:15, May 17, 2016.

13

providing notice of new disclosures during a deposition, "even when that deposition testimony completely covers the material that should have been disclosed." Samsung, 314 F.R.D. at 198 (citing Perkins v. United States, 626 F. Supp. 2d 587, 591–92 (E.D. Va. 2009)).

It is clear that Defendant failed to disclose crucial documents "at the right time," or indeed, at all, before the Court demanded an explanation for Defendant's actions. The Court itself observed that the documents "were found somewhere where [Defendant said] they shouldn't have been, but notably they weren't found until the Court had begun to impose sanctions in the case to explain their nonproduction." Hearing Tr. at 19:12–18, June 1, 2016. Defendant even admitted that the Court's requiring it to "certify that they couldn't find them[,] that they had been lost" was the impetus for "[taking] the Court's direction very seriously" and "[doing] another search for more documents." Id. at 16:17–17:1. Though Defendant eventually produced documents, it did so only a few weeks before trial and after claiming that they were irretrievable and duplicative. Cooley Counsel B Decl. ¶ 113. Had the case gone to trial, Plaintiff likely could not have thoroughly incorporated the various documents into its case theory. Defendant therefore did not and could not cure its failure to disclose.

### iii. Disruption of Trial

Defendant produced the missing Board meeting presentations and minutes in May 2016. Doc. 430 at 4 n.7; Doc. 431 at 1; Doc. 508 at 16. Trial was scheduled to begin on June 1, 2016, Doc. 24, but the Parties settled. See Hearing Tr. at 2:13–18, June 1, 2016. It is not the Court's role to guess how the documents would have affected the trial, particularly because the discovery violations may have energized the settlement. This factor, therefore, does not indicate harm to Plaintiff.

### iv.  Importance of the Evidence

Defendant argues that Plaintiff's supplemental damage report prepared after the late production "did not increase its damages request by even a cent," thus suggesting that the lately produced materials were irrelevant to the case. Doc. 491 at 26.  However, the untimely materials would clearly have been crucial to Plaintiff's case; the evidence that Defendant knew about Plaintiff and its patented products "directly impact[ed] willful infringement, induced and contributory infringement, enhanced damages, and whether and to what extent [Defendant] copied [Plaintiff]'s technology." Doc. 508 at 13.  Remarkably, Defendant itself included in its documents to be produced at trial sixty-five (65) exhibits which were produced long after the close of discovery. Doc. 491 at 19–20.  Defendant added the Board materials to its trial exhibit list because counsel "believed that it would be important for the jury to see the two Board presentations mentioning [Plaintiff] in the context of all the other presentations." Id. at 19. While the Court indicated that Defendant's late disclosure "opened the door" to Plaintiff producing additional evidence, it is a mystery to the Court why Defendant believed it could rely upon its own documents produced out of time.  The fact that both Parties sought to use the materials at trial weighs in favor of a finding of harm.

### v.  Defendant's Explanation for Nondisclosure

A circumstance out of the nondisclosing party's control can be an adequate explanation for nondisclosure, as the inquiry is more about "the feasibility of full and timely disclosure than . . . parties' intent." Samsung, 314 F.R.D. at 199–200 & n.12.  The Fourth Circuit has explicitly denied that a court must examine the nondisclosing party's faith in examining its justifications, but analyzing faith may be helpful in evaluating the party's explanation. S. States, 318 F.3d at 598.

Defendant concedes that "mistakes were made, but they did not result from bad faith, and bad faith did not result in any cover-up." Doc. 490 at 28. Defendant highlights its implementation of an "early litigation hold" and its search of its "several central document repositories," Doc. 491 at 6–7, both of which are litigation requirements. Defendant claims that Management Employees B and C's neglecting to search their e-mail accounts for Vir2us references "went unnoticed, due in large part to the lack of anything from other sources referencing Vir2us." Id. at 9. Defendant astutely adds, "timely follow-up . . . could have headed off the criticism that Invincea and its counsel face today." Id.

With regard to the investor materials, Defendant claims that when it was specifically asked for them on March 9, 2016, Defendant searched the Box.com and Relativity databases and other areas and found only six (6) presentations, which it "produced right away, on March 16, 2016." Id. at 15.

After Defendant discovered the "missing" Board materials, counsel explained that he determined

> the burden of redacting and logging the privileged information in the Board materials would not be proportional to the minimal value of what [he] saw as the other cumulative duplicative information in those materials. [Defendant] therefore did not review or produce the remaining Board presentations and minutes that were in the Relativity database.

Cooley Counsel B Decl. ¶ 113. Counsel claimed that he discussed his reasoning with Plaintiff's counsel at one point. Id. ¶ 116. Defendant further rationalized that had Plaintiff's requests for production "specifically ask[ed] for Board presentations and Board minutes," Defendant would have readily produced all of the documents. Id. ¶ 113. Plaintiff argues that because Defendant previously located "duplicative" Board materials in the Relativity database, Defendant should have searched the remainder of the database to ensure that no other materials existed. Doc. 508

16

at 14.

Requiring Plaintiff to specifically describe documents it neither authored nor possessed is inconsistent with the Federal Rules' allowance of broad discovery to effect a just trial. Defendant's excuses do not constitute a substantial justification for its failure to disclose.

**C.   Sanctions Are Appropriate.**

Before the Parties settled the case, Plaintiff requested that Defendant's late-produced exhibits be stricken, the sanctions of preclusion and adverse jury instructions be imposed, and Defendant be held in contempt for violating the Court's order compelling discovery. Doc. 431 at 9–12; Doc. 461 at 3. Trial-related sanctions are inappropriate now. However, the Court **FINDS** that other sanctions are warranted "to ensure the proper functioning of judicial process." Bradley, 378 F.3d at 380.

The Court believes that sanctions are necessary in this case not only because discoverable documents were not timely produced—including some which contained admissible evidence and may have contained evidence or information that would lead to additional discoverable evidence—but also because Plaintiff and the Court will never know what may have been uncovered had Defendant properly conducted discovery. Without demonstrably good faith adherence to the rules of discovery and orders of the Court, the Parties will never believe with any degree of certainty that the litigation would have been resolved in a just, speedy, and inexpensive manner. See Fed. R. Civ. P. 1.

While Rule 37(c)(1) "is often read as an automatic preclusion sanction against a noncomplying party that prevents that party from offering the nondisclosed evidence in support of a motion or at trial, the second sentence of the rule permits 'other appropriate sanctions' in addition to or in lieu of the automatic preclusion." Samsung, 314 F.R.D. at 200 (citing Rambus,

Inc. v. Infineon Techs. AG, 145 F. Supp. 2d 721, 724 (E.D. Va. 2001)). "District courts enjoy broad discretion to select an appropriate remedy in light of the totality of the circumstances." Thomas v. FTS USA, LLC, No. 3:13cv825, 2016 WL 3566657, at *10 (E.D. Va. June 24, 2016). The sanction options contained in Rule 37(b), unlike preclusion, impose penalties "when a party fails to disclose evidence helpful to an opposing party." S. States, 318 F.3d at 592 n.2; accord Fed. R. Civ. P. 37(c) advisory committee note to 1993 amendment ("Preclusion of evidence is not an effective incentive to compel disclosure of information that, being supportive of the position of the opposing party, might advantageously be concealed by the disclosing party."). District courts in the Fourth Circuit utilize a four-factor calculus in imposing sanctions: "(1) whether the non-complying party acted in bad faith; (2) the amount of prejudice that non-compliance caused the adversary; (3) the need for deterrence of the particular sort of noncompliance; and (4) whether less drastic sanctions would [be] effective." Law Enf't All. of Am., Inc. v. USA Direct, Inc., 61 Fed. App'x 822, 830 (4th Cir. 2003) (quoting Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians, 155 F.3d 500, 504 (4th Cir. 1998)).

### i. Defendant's Faith and the Prejudice to Plaintiff

The evidence falls short of persuading the Court that Defendant or its lead counsel acted in bad faith, but neither does the evidence establish that Defendant acted in good faith. Because the late produced materials were central to Plaintiff's case, Defendant's nondisclosure—despite its motive—damaged Plaintiff's ability to properly assert its claims.

### ii. Deterring Defendant's Noncompliance

The Court exhorted the Parties during discovery that "the burden is on all of us to try to streamline this process," Hearing Tr. at 25:17–18, Apr. 21, 2016, but Defendant persisted in its noncompliance and complicated discovery. Though the Court does not seek to "make an

18

example" of Defendant, "deterrence requires that the Court leave [the nondisclosing party] worse off than it would have been if it had disclosed properly."   Samsung, 314 F.R.D. at 205. Litigating parties must understand their ethical responsibilities to engage in proper and diligent discovery; lesser attempts like Defendant's inhibit the Court's ability to preside over a fair trial.

### iii.  Efficacy of Less Drastic Sanctions

Monetary sanctions are appropriate in the absence of a trial, and they are generally less drastic than those available before or during trial. See Fed. R. Civ. P. 37; Samsung, 314 F.R.D. at 201–03.

## IV.  CONCLUSION

It is impossible from the record to determine who among Defendant's employees and lead counsel were at fault for the discovery violations and to what degree.  It is not the Court's duty to unravel the details and determine the actors' degrees of responsibility.  What occurred is, at bottom, sanctionable conduct for which Defendant and its principal counsel are both responsible.   No evidence indicates that Defendant's local counsel played any role in the discovery abuses.[8]

There was apparently a disconnect among Defendant's lead counsel: some counsel were more successful in locating documents than others, and there may have been disagreement regarding which documents were discoverable.  There may well have been a similar disconnect between Defendant and its lead counsel.  Significant discovery abuses resulted from these miscommunications.

None of Defendant's late disclosures could be classified as a "smoking gun," although neither Plaintiff or the Court will ever know if proper discovery would have led to the same.  The

---

[8] Defendant's local counsel took responsibility for failing to notify Plaintiff's counsel of the addition of sixty-five (65) exhibits to Defendant's trial exhibit list.  Local Counsel A Decl. ¶¶ 8–9.

evidence was nonetheless discoverable, and the Court believes some of it would have been admissible at trial.

For the reasons set forth above, the Court **GRANTS IN PART** Plaintiff's Show Cause Motion, Doc. 430, and **DENIES** Plaintiff's Motion to Strike, Doc. 461, as **MOOT**. The Court hereby **IMPOSES** sanctions jointly and severally against Defendant Invincea and its principal firm, Cooley LLP, in an amount approved by the Court. This Order amends and supersedes the Court's Order of January 6, 2017, Doc. 524, which was placed under seal and shall remain under seal until further order of this Court.

The Clerk is **REQUESTED** to deliver electronically a copy of this Opinion and Order to all counsel of record.

It is so **ORDERED**.

/s/

Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, VA

January 25, 2017